# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LINDA REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14 C 2247 |
| | ) | |
| STATE OF ILLINOIS, CIRCUIT | ) | |
| COURT OF COOK COUNTY, | ) | Judge Jorge L. Alonso |
| ILLINOIS, THE HONORABLE | ) | |
| JUDGE CAROLYN QUINN, in her | ) | |
| official capacity as Circuit Judge of the | ) | |
| Cook County Circuit Court, THE | ) | |
| HONORABLE JUDGE ANN COLLINS- | ) | |
| DOLE, in her official capacity as Circuit | ) | |
| Judge of the Cook County Circuit Court, | ) | |
| THE HONORABLE JUDGE TIMOTHY | ) | |
| C. EVANS, in his official capacity as | ) | |
| Chief Judge of the Cook County Circuit | ) | |
| Court, and MELISSA PACELLI, in her | ) | |
| official capacity as Court Disability | ) | |
| Coordinator for the Circuit Court of | ) | |
| Cook County, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In her third amended complaint, plaintiff alleges that defendants violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). The case is before the Court on defendants' Federal Rule of Civil Procedure 12(b)(6) motions to dismiss. For the reasons set forth below, the Court grants in part and denies in part the motion of the state of Illinois, the Circuit Court of Cook County, Judge Quinn, Judge Collins-Dole, and Chief Judge Evans and grants Pacelli's motion.

**Facts**

Plaintiff has Tardive Dyskinesia, a neurological disorder that causes "involuntary movements in her limbs, hands, and mouth, . . . an uncontrollable impulse to move," "difficulty in logical or critical thinking[,] and inability to verbally communicate." (3d Am. Compl. ¶ 13.) She also has "PTSD, bipolar disorder, and acute anxiety." (*Id.*) Her conditions are exacerbated by stress. (*Id.* ¶ 15.)

In July 2005 and March 2009, respectively, probate cases were opened in the Circuit Court of Cook County for the estates of plaintiff's mother and father. (*Id.* ¶¶ 17, 19.) From March 5, 2014 through May 7, 2014, defendant Quinn presided over both probate cases. (*Id.* ¶¶ 18, 20.) From May 7, 2014 "until the close of these files," defendant Collins-Dole presided over these cases. (*Id.* ¶ 21.) Plaintiff was a pro se litigant in both cases. (*Id.* ¶ 22.)

On December 11, 2013, plaintiff asked defendant Pacelli via email for a request for accommodations form, which Pacelli provided. (*Id.* ¶ 24.)

On February 3, 2014, plaintiff returned the form to Pacelli, apparently requesting that she not have to appear in court. (*Id.* ¶ 25; *see id.* ¶ 27.)

On February 5, 2014, Pacelli emailed plaintiff, asking how her disability prevented her from appearing in court. (*Id.* ¶ 27.) Plaintiff responded that "her nervous system disorder resulted in involuntary jerky movements, impaired her speech, [caused] anxiety, contortions characterized as aggression, inability to recall and/or articulate words, grunting noises, screaming, and otherwise [made her] appear[] out of order." (*Id.* ¶ 28.)

On February 7, 2014, Pacelli emailed plaintiff a list of proposed accommodations, including that: (1) defendant Quinn "would allow the initial hearing to be done by telephone conference and

2

would make a case-by-case determination on whether telephone conference[s] would be permitted for subsequent hearings"; and (2) plaintiff could provide a note-taker for her appearances in court or obtain hearing transcripts from the official court reporter. (*Id.* ¶ 29.)

Plaintiff requested clarification from Pacelli, and asked that Pacelli provide only "yes" or "no" answers to plaintiff because narratives "ma[de] [her] sick." (*Id.* ¶ 31.) Pacelli responded that the "accommodations process [was] . . . interactive" and "often a simple 'yes' or 'no' [would] not suffice." (*Id.* ¶ 32.) Pacelli also explained that plaintiff could appear via telephone for the March 5, 2014 hearing, a temporary gmail address had been set up for the hearing so plaintiff could use g-chat to type her questions and answers to the judge, though the judge would speak and respond orally, and the judge could not "commit to a hearing where [plaintiff] [would] only provide yes and no responses." (*Id.* ¶ 33.)

Plaintiff told Pacelli that "she had looked into . . . g-chat . . . but was under too much stress to learn new technology." (*Id.* ¶ 34.) Pacelli then offered plaintiff the use of Textnet, another technology for typing her communications to the judge. (*Id.* ¶ 36.)

In response, plaintiff told Pacelli that she became sick after "every exchange (interactive process)" with Pacelli and felt the court was trying "to accommodate her physical disabilities" but not her "psychological and neurological disabilities." (*Id.* ¶ 38.) Pacelli said the court had made several attempts to accommodate plaintiff and asked her to suggest reasonable accommodations. (*Id.* ¶ 39.) Among other things, plaintiff asked for the court to provide her with a computer, a note-taker, a lawyer, and someone to help her communicate, that she communicate only via email with the judge during hearings, and that the court make her note-taker's notes part of the court record. (*Id.* ¶ 40.)

On March 5, 2014, Pacelli told plaintiff "[t]he nine accommodations you requested . . . will not be granted by the court," and offered "teleconference, Textnet, or g-chat as accommodations." (*Id.* ¶ 41.) The same day, plaintiff participated in a hearing in her father's probate case via teleconference. (*Id.* ¶ 42.) During the hearing, "[p]laintiff struggled to verbally articulate and, therefore, argue and advocate on her own behalf," and "became confused under stress." (*Id.*)

On March 11, 2014, for reasons not alleged in the complaint, plaintiff "was forced to temporarily withdraw from the interactive process." (*Id.* ¶ 43.)

On May 23, 2014, Pacelli told plaintiff via email that Quinn had recused herself from the probate cases, the next status date was May 29, 2014, and the accommodations plaintiff had previously been given would continue in the proceedings before the new judge, defendant Collins-Dole. (*Id.* ¶ 47.) Pacelli also said that she would send orders to plaintiff via email, as an accommodation. (*Id.* ¶ 48.)

Plaintiff attended a hearing on August 28, 2014 by teleconference, but she could not hear her sister's testimony and could not cross-examine her "due to [plaintiff's] inability to speak from the stress and her disorder." (*Id.* ¶ 49.) In addition, plaintiff's phone disconnected at one point during the hearing, and at another, Collins-Dole told plaintiff to "stop talking" when she tried to ask a question. (*Id.*)

"[O]n numerous occasions," plaintiff told Pacelli "that hearings make her sick, she has required medical treatment after such hearings, and/or she becomes physically ill after such hearings" and "has asked for assistance in reducing the stress associated with court but has not received accommodations in this regard." (*Id.* ¶ 53.) Plaintiff also told Pacelli that "she experiences 'dissociative events' during hearings because of stress and/or her inability to communicate

4

effectively" but "[n]o accommodations have been provided in the event that a dissociative event occurs during a court appearance." (*Id.* ¶ 54.)

Both probate cases are now closed. (*Id.* ¶ 55.)

**Discussion**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

As an initial matter, plaintiff's claims against the Circuit Court of Cook County, Judge Quinn, Judge Collins-Dole, Chief Judge Evans, and Melissa Pacelli are redundant of those she asserts against the state of Illinois. *See Landers Seed Co., Inc. v. Champaign Nat'l Bank*, 15 F.3d 729, 731-32 (7th Cir. 1994) (state courts are branches of state government); *Orenic v. Ill. State Labor Relations Bd.*, 537 N.E.2d 784, 795 (Ill. 1989) (circuit court employees are employees of the state); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (official capacity claims against state employees are actually claims against the state). Accordingly, the Court dismisses plaintiff's claims against the Circuit Court of Cook County, Judge Quinn, Judge Collins-Dole, Chief Judge Evans, and Melissa Pacelli.[1]

---

[1] Because the individual defendants are sued only in their official capacities, they do not have absolute or quasi-judicial immunity from plaintiff's claims. *See DeVito v. Chi. Park Dist.*, 83 F.3d 878, 881 (7th Cir. 1996) (stating in an ADA case that "[t]he only immunities available in an official capacity suit are those that may be asserted by the governmental entity itself (*e.g.*, Eleventh Amendment immunity or sovereign immunity)"); *Reed v. Illinois*, 12 C 7274, 2014 WL

5

Plaintiff alleges that the remaining defendant, the State of Illinois, violated the ADA and the RA. *See* 42 U.S.C. § 12132 (ADA) ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity . . . .");[2] 29 U.S.C. § 794 (RA) ("No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .").[3] To state a viable claim under either the ADA or RA, plaintiff must allege that the State refused to reasonably modify its policies, practices, or procedures for her. 28 C.F.R. § 35.130(b)(7) (" A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would

---

917270, at *6 (N.D. Ill. Mar. 10, 2014) (holding that judicial immunity did not bar plaintiff's ADA claims against Pacelli, Chief Judge Evans, and Circuit Judge Jones in their official capacities), *appeal docketed*, No. 14-1745 (7th Cir. Apr. 8, 2014). Even if they did, however, that immunity would not extend to the state. *Cf. Capra v. Cook Cnty., Bd. of Review*, 733 F.3d 705, 711 (7th Cir. 2013) ("Unlike individuals sued in their individual capacities, . . . municipal entities are not entitled to absolute immunity even where the entity's officers are entitled to immunity."), *cert. denied*, 134 S. Ct. 1027 (2014); *Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006) (stating that "units of government are not entitled to immunity in suits under § 1983" because "[o]fficial immunities (judicial, legislative, absolute, qualified, quasi, and so on) are personal defenses designed to protect the finances of public officials whose salaries do not compensate them for the risks of liability," a "justification [that] does not apply to suits against units of state or local government, which can tap the public fisc").

[2]The Supreme Court has held that "[ADA] Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment," and thus abrogates the states' immunity from suit in federal court for such claims. *Tennessee v. Lane*, 541 U.S. 509, 533-534 (2004).

[3]The state does not contest the receipt-of-federal-funds element of the RA claim.

fundamentally alter the nature of the service, program, or activity."). A reasonable modification "is one that gives the otherwise qualified plaintiff with disabilities meaningful access to the program or services sought," *McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) (quotations omitted), and "is both efficacious and proportional to the costs to implement it," *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002).[4]

Plaintiff affirmatively alleges that the State allowed her to participate in hearings by telephone, permitted her to use a note-taker, and offered to let her communicate electronically with the judges by g-chat or Textnet. (3d Am. Compl. ¶¶ 29, 33, 37.) Plaintiff argues, however, that none of these accommodations "addressed [her] [in]ability to speak clearly and cohesively at a rate necessary to keep pace with the proceedings, her unpredictable dissociative events or her cognitive function disability." (Pl.'s Mem. Law Opp'n Mot. Dismiss at 6.) Under the circumstances, plaintiff says, the State should have appointed a lawyer to represent her or provided "someone to . . . assist[] . . . her in communicating." (3d Am. Compl.¶ 40.)[5]

---

[4]Contrary to the State's assertion, which is based on cases arising under 42 U.S.C. § 1983, (*see* State Defs.' Mem. Supp. Mot. Dismiss at 9 (*citing Graham*, 473 U.S. at 167; *Hafer v. Melo*, 502 U.S. 21, 25 (1991)), the ADA and RA do not require plaintiff to plead that the State has a policy of discriminating against the disabled.

[5]The other accommodations plaintiff allegedly requested were "email correspondence [with the judge] during the hearing instead of having to speak, a lawyer, . . . acceptance of her note-taker's notes into the record, [and] a computer to use." (3d Am Compl. ¶ 40.) However, she affirmatively alleges that the State said she could use a note-taker and offered to let her communicate electronically with the judge during hearings. (*See id.* ¶¶ 29, 33, 41.) Moreover, the ADA and RA do not require the State to provide plaintiff with "personal devices" like a computer or to make a modification, like modifying its official record of proceedings with a note-taker's notes, that "would fundamentally alter the nature of the service" provided. *See* 28 C.F.R. §§ 35.130(b)(7), 35.135.

7

The State contends that appointment of counsel cannot be a reasonable accommodation because there is no constitutional right to appointment of counsel in civil cases. *See Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993). However, the Supreme Court has held that Congress' power to enforce the Fourteenth Amendment, pursuant to which Title II of the ADA was enacted, includes the authority to "prohibit 'a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text.'" *Tennessee*, 541 U.S. at 533 n.24 (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 81 (2000)). Thus, the fact that the Constitution does not require the State to appoint a lawyer for plaintiff does not mean that such an appointment cannot be a reasonable accommodation under the ADA.

The State also argues that plaintiff's claims fail because she has not alleged that it intentionally discriminated against her, a prerequisite to obtaining compensatory damages. *Strominger v. Brock*, 592 F. App'x. 508, 511 (7th Cir. 2014) ("Even if Strominger could show a violation of the ADA and/or Rehabilitation Act, he could not recover compensatory damages without showing intentional discrimination."). Plaintiff argues that this requirement is satisfied by allegations of deliberate indifference, but the Seventh Circuit "has yet to decide whether discriminatory animus or deliberate indifference is required to show intentional discrimination." *Strominger*, 592 F. Appx. at 511. However, most of the appellate courts that have addressed the issue agree with plaintiff. *See McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) ("A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights."); *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013) (holding that "a showing of deliberate indifference may satisfy a claim for compensatory damages under [the RA] and . . . the ADA"); *Meagley v. City of Little Rock*, 639

F.3d 384, 389 (8th Cir. 2011) (same); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001) (same); *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999) (same); *Bartlett v. N.Y. State Bd. of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998) (same), *vacated on other grounds*, 527 U.S. 1031 (1999); *but see Carmen-Rivera v. Puerto Rico*, 464 F.3d 14, 18 (1st Cir. 2006) (requiring allegations of discriminatory animus); *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 575 (5th Cir. 2002) (same). As the court in *Durrell* explained:

> [T]he deliberate indifference standard is better suited to the remedial goals of the RA and the ADA than is the discriminatory animus alternative. In discussing the enactment of the RA and the ADA, the Supreme Court observed that "[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference–of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985); *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-45 (9th Cir. 2011) (applying Choate's discussion of the enactment of the RA to the ADA). Moreover, "[f]ederal agencies and commentators on the plight of the handicapped similarly have found that discrimination against the handicapped is primarily the result of apathetic attitudes rather than affirmative animus." *Alexander*, 469 U.S. at 296, 105 S.Ct. 712. Consistent with these motivations, the RA and the ADA are targeted to address "more subtle forms of discrimination" than merely "obviously exclusionary conduct." *Chapman*, 631 F.3d at 945. Thus, a standard of deliberate indifference, rather than one that targets animus, will give meaning to the RA's and the ADA's purpose to end systematic neglect. . . .

729 F.3d at 264. The Court agrees with the reasoning of *Durrell* and holds that allegations of deliberate indifference satisfy the intentional discrimination requirement for ADA and RA damages claims.

Deliberate indifference, in this context, requires both "(1) 'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that likelihood.'" *Id.* at 262-63 (quoting *Duvall*, 260 F.3d at 1139). The federally-protected right implicated in this case is that of an individual "to obtain access to the courts without undue interference." *Snyder v. Nolan*,

9

380 F.3d 279, 291 (7th Cir. 2004) (per curiam) (stating that the right of access "is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process"). Plaintiff's right of access was imperiled if she was "hindered" in "[her] efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Thus, to satisfy the deliberate indifference standard, plaintiff must allege that the State knew her pursuit of the probate claims would likely be hindered unless it appointed a lawyer to represent her or provided her "with someone to . . . assist[] . . . her in communicating," but refused to do so.

Plaintiff alleges that: (1) she told Pacelli (a) her speech was "impaired," she was unable "to recall and/or articulate words," and she experiences short-term memory loss when under stress, (b) "narrative[]" exchanges "make[] [her] sick," (c) she "experience[d] 'dissociative events' during the hearings because of stress and/or her inability to communicate effectively," and (d) she "was under too much stress to learn" the g-chat technology; (2) she asked Pacelli for a lawyer or "someone to provide assistance to her in communicating"; and (3) Pacelli denied that request. (*See* 3d Am. Compl. ¶¶ 28, 31, 34, 40-41, 54.) These allegations are sufficient to suggest that the State, through Pacelli, was deliberately indifferent, *i.e.*, knew there was substantial likelihood that plaintiff's right of access to courts would be infringed unless someone assisted her during the probate hearings, yet failed to provide that assistance. Accordingly, plaintiff has stated viable claims under the ADA and RA.

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part the motion to dismiss of the State of Illinois, the Circuit Court of Cook County, Judge Quinn, Judge Collins-Dole, and Chief Judge Evans [50], grants Pacelli's motion to dismiss [45], dismisses plaintiff's claims against the Circuit Court of Cook County, Judge Quinn, Judge Collins-Dole, Chief Judge Evans, and Melissa Pacelli, and terminates them as parties to this case. Plaintiff's claims against the State of Illinois, which is the only defendant remaining in this suit, will stand. A status hearing is set for 8/19/15 at 9:30 a.m.

**SO ORDERED.**                    **ENTERED:**

_____
**JORGE ALONSO**
**United States District Judge**