# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LINDA REED, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No: 14 C 2247 |
| v. | )<br>) Judge Jorge L. Alonso |
| STATE OF ILLINOIS, et al., | )<br>) Magistrate Judge Jeffrey Cole |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of nonparty, Eleise Moore, to quash the subpoena (captioned, "Motion to Nullify Subpoena") that the Plaintiff, Linda Reed, served on her on May 21, 2016. [Dkt. #104]. The Plaintiff happens to be Ms. Moore's sister, and while her lawsuit is an action brought under the Americans with Disabilities Act and the Rehabilitation Act, it touches on the distribution of assets from the estate of their mother, Evia Tharbs, who passed away in November 2013. The Plaintiff alleges that she suffers from a number of disabilities and was not provided adequate accommodations in the Circuit of Cook County to allow her to participate meaningfully in the Probate Court Guardianship proceeding that involved the failure of the guardian of Evia's estate to locate and safeguard Evia's assets. Evia was disabled as well – she suffered from Alzheimer's disease, *In re Estate of Tharbs*, No. 1-14-3079, 2015 WL 4039853, at *1 (Ill. App. Ct. June 30, 2015) – and, for a time, the guardian was a brother of Plaintiff and

Ms. Moore, Eddie Tharbs, Jr.[1] The subpoena requires Ms. Moore – who also served as guardian for a time – to sit for a deposition and to produce documents pertaining to the guardianship, distribution of assets, any wills of Evia and Eddie Tharbs, Sr., safe deposit boxes, etc. [Dkt. #108-1]. The Plaintiff asserts that such discovery is relevant to the measure of damages she suffered as a result of the alleged failure to adequately accommodate her disabilities.[2]

Ms. Moore, proceeding *pro se*, states that, when she received the subpoena, she telephoned Plaintiff's attorney and asked him what the case was about. She says that counsel explained to her that it was a case under the Americans with Disabilities Act, and that her sister was claiming that she had been denied adequate accommodations, specifically, an appointed attorney. In her motion to quash, Ms. Moore protests that she

---

[1] Evia was married to Eddie Tharbs, Sr., and they had 13 children. Eddie, Sr., passed away in 2009. A number of the children served as guardians, in succession, of Evia's person and estate as a disabled person during the period from 2006 to 2013. Eddie, Jr., was appointed guardian on November 30, 2009. *In re Estate of Tharbs*, No. 1-14-3079, 2015 WL 4039853, at *1 (Ill. App. Ct. June 30, 2015).

[2] The court is aware that the Defendants maintain that neither the Americans with Disabilities Act nor the Rehabilitation Act could mandate appointment of counsel as a reasonable accommodation and dispute that Plaintiff could recover damages embracing the value of assets missing from her mother's estate. At this point, however, that is the claim, and under Fed.R.Civ.P. 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." While the Illinois Appellate Court ruled that Plaintiff in that case chose the wrong avenue to attempt to recover assets from her mother's estate, *In re Estate of Tharbs*, No. 1-14-3079, 2015 WL 4039853, at *8, that does not necessarily eliminate the possibility that she may have chosen more wisely or fared better with accommodations such as appointment of counsel. More importantly, as the Defendants allow, the resolution of the scope of damages available and the reasonableness of such an accommodation is inappropriate at this point. For the time being, the discovery sought is relevant and proportional to the Plaintiff's claim for damages. Moreover, "[i]n the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness." *Languor v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2nd Cir. 1975). *Accord Uppal v. Rosalind Franklin University of Medicine and Science*, 2015 WL 5026228, at *4 (N.D.Ill., 2015); *Zoobuh, Inc. v. Rainbow Intern. Corp.*, 2015 WL 2093292, 2 (D.Utah 2015).

doesn't have any of the requested documents, and knows nothing about the case or the Americans with Disabilities Act; she claims doesn't even know if her sister has a disability. She complains that the subpoena has put her "in an oppressed state" and has "become disturbing and cruel on [her] spirit." She claims she has a history of seizure and sleep issues and calls the "extreme stress" and "heavy burden" the subpoena has imposed on her "detrimental to [her] health and well-being." [Dkt. #104].

Under Fed.R.Civ.P. 45(d)(3)(A)(iv), a district court "must quash or modify a subpoena" if it subjects the respondent to an undue burden. In this regard, the court notes that Ms. Moore is a non-party. It is one thing to subject *parties* to the trials and tribulations of discovery – rightly regarded as "the bane of modern litigation," *Rosetta v. Past Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir. 2000) – but a non-party doesn't usually have a horse in the race. *Robinson v. Stanley*, No. 06 C 5158, 2010 WL 1005736, at *3 (N.D. Ill. Mar. 17, 2010). Still, it is up to the respondent to establish undue burden with a particularized showing. *CSC Holdings, Inc. v. Radios*, 309 F.3d 988, 993 (7th Cir. 2002). Ms. Moore hasn't done that here, relying exclusively on unadorned assertions regarding the stress and worry the subpoena has subjected her to and claiming, unconvincingly given the record, that she knows nothing about the topic of the subpoena. Moreover, a claim of ignorance about the subject matter of the subpoena is insufficient. *Horizons Titanium Corp. v. Norton Co*., 290 F.2d 421, 425 (1st Cir. 1961). The subject is discussed at some length in *Johnson v. Jung,* 242 F.R.D. 481, 483 (N.D.Ill. 2007). The fact that Ms. Moore is *pro se* ought not to change the applicability of the above rule.

*McNeil v. United States*, 508 U.S. 106 (1993); *SEC v. Spadaccini*, 256 F.App'x 794, 795 (7th Cir. 2007).

It is clear, or at least very likely, that Ms. Moore knows far more about the subject matter of the subpoena than her motion to quash suggests. She doesn't have to know anything about the Americans with Disabilities Act or her sister's condition, of course, to answer questions about the assets at issue at her deposition. *Johnson*, 242 F.R.D. at 483. *See also Flowers v. Owens*, 274 F.R.D. 218, 222 (N.D.Ill. 2011). The questions are going to be about what she may or may not know about assets from her mother's estate. That's abundantly clear from the document rider; so her claim that she has no knowledge does not resolve the issue. Ms. Moore may have played at least some role in her mother's guardianship, as is obvious from the Illinois Appellate Court's decision in the case.

In October 2005, Ms. Moore and another of her sisters, Doris Wilson, petitioned to be appointed plenary co-guardians of Evia's estate and as a disabled person. *In re Estate of Tharbs*, No. 1-14-3079, 2015 WL 4039853, at *1. They were appointed as such on February 8, 2006, and Ms. Moore served in that capacity until January 16, 2008. *In re Estate of Tharbs*, No. 1-14-3079, 2015 WL 4039853, at *2.[3] Along the way, she and her sister, Doris, did file at least one account of their mother's estate. *In re Estate of Tharbs*, No. 1-14-3079, 2015 WL 4039853, at *2. Ms. Moore may not have a copy of that document, or any of the requested documents or know where they are – as she now

---

[3] Ms. Moore asked to withdraw as co-guardian on May 3, 2007. *In re Estate of Tharbs*, No. 1-14-3079, 2015 WL 4039853, at *2.

claims – but that does not excuse her from responding to the request and saying so at a deposition. *Johnson*, 242 F.R.D. at 483.

Morever, the deposition testimony of another of Ms. Moore's sisters, Darlene Moore, also indicates that Ms. Moore has knowledge regarding those assets and may, indeed, have responsive documents. On March 2, 2016, Plaintiff deposed Darlene Moore and she recounted a tale of Ms. Moore and yet another sister, Zelda Martin misappropriating assets from their mother's estate. Darlene testified that she had her mother's power of attorney, and her mother instructed her what to do with her assets upon her death. [Dkt. #108-3, Darlene Moore Dep., at 25]. Plaintiff's counsel asked at the deposition what happened to her mother's annuity when she died. She responded:

> A: My sisters got it, Eleise Moore and Zelda Martin.
>
> Q: How did they get it?
>
> A: Went to the bank, forged my mother's name, which you will see the forgery.
>
> Q: So Eleise and who else?
>
> A: Zelda Martin.

[Dkt. #108-3, Darlene Moore Dep., at 26]. Later, Darlene Moore testified that her two sisters took *all* of their mother's money:

> A: . . . But they took the money.
>
> Q: Who is "they"
>
> A: My two sisters, Eleise Moore and Zelda Martin.
>
> Q: And what money did they take precisely, Ms. Moore?
>
> A: Huh?

5

Q: All of it?

A: All.

Q: You said they took the money. I'm trying to figure out - -

A: They took every penny that ever belonged to my mother. So I guess that's what you're asking. I don't know.

[Dkt. #108-3, Darlene Moore Dep., at 48-49].

That's rather incendiary testimony, but the Illinois Appellate Court's opinion suggests that there may be another version that casts Darlene and Ms. Moore in very different roles. Early in the proceedings in state court, Darlene was ordered to appear and make a complete accounting. When she failed to do so, the state court had to order the Sheriff of Cook County to bring her in – involuntarily if necessary. *In re Estate of Tharbs*, No. 1-14-3079, 2015 WL 4039853, at *1. Later, Ms. Moore and Doris had an issue with Darlene's handling of their mother's assets and raised a claim to that effect. *In re Estate of Tharbs*, No. 1-14-3079, 2015 WL 4039853, at *2. So, Ms. Moore may not be the villain her sister depicts her as in her testimony. But, whatever the truth is, Ms. Moore is in no position to claim general ignorance about the subject matter of the subpoena. *Johnson*, 242 F.R.D. at 483.

It does not help Ms. Moore's position that it is not until her reply brief, having been confronted with the Illinois Appellate Court decision and Darlene's testimony, that she finally adverts to any knowledge about the real subject matter of the subpoena: the probate case and the distribution of her mother's assets. After having failed to mention the state court proceedings in her opening brief – let alone confessing to any knowledge

about them – she concedes in her reply brief that she was actually a part of those proceedings, and she is fairly conversant with them:

> During the probate case the judge ordered Eddie Tharbs Jr., the legal guardian, to provide documentation for a final accounting of our parents' estate. If the plaintiff is due any economic damages the amount may be determined based on the findings in the probate case, referenced by the plaintiff's attorney.
>
> \* \* \*
>
> In response to Darlene Moore's deposition her claims were addressed in the probate case as well.
>
> \* \* \*
>
> Your Honor, the probate case that was referenced by the plaintiff's attorney was in the court for more than 10 years, because of the plaintiff and her attorney (not the current attorney). I appeared in court with my sister, Doris Wilson, only a few times. Yet, I do not know the exact dates. The two of us were assigned temporary guardians of Evia Tharbs, but not of her property because Darlene Moore obtained an illegal power of attorney of my parents' finances. I do not have, nor ever had control of their property. The plaintiff and all other members of the family are fully award[sic] of these facts. I requested in writing to be removed as guardian and the judge honored by[sic] request (a letter in on file).

[Dkt. #115]. Ms. Moore's reply brief, then, certainly paints a different picture of her knowledge about the topic of the subpoena than she was willing to depict in her motion to quash.

That leaves Ms. Moore's complaints about stress, health, and burden, which she asserts in both her motion to quash and her reply brief. Her reply brief suggests that some of the stress is due to being "hauled into court" [Dkt. #115, at 2], but she doesn't have to worry about that, because as the subpoena states, the deposition will take place at a law firm, and thus it will not be as arduous as Ms. Moore anticipates.

Beyond that, her somewhat vague and unsupported claims regarding the stress of responding to a subpoena are not sufficient. Courts have rejected far more concrete

7

claims than the ones Ms. Moore makes here – and far better supported. *See, e.g., Aarhus v. Weber Stephen Products LLC*, No. 13-CV-684, 2014 WL 1385336, at *2 (E.D. Wis. Apr. 9, 2014)(denying motion to quash subpoena for deposition of two minor children undergoing mental health treatment as a result of their father's accident); *Angler v. 41B Dist. Court*, No. 04-CV-73977, 2009 WL 3497801, at *6 (E.D. Mich. Oct. 29, 2009)(denying motion to quash subpoena despite letter from doctor regarding the ill effect of stress on the respondent); *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 257 (D. Kan. 1996)("Bald assertions of emotional and financial stress, moreover, do not suffice."). "There must be affirmative and compelling proof. *Ipse dixits* will not suffice." *United States v. Amerigroup Illinois, Inc*., No. 02 C 6074, 2005 WL 3111972, at *2 (N.D. Ill. Oct. 21, 2005). Ms. Moore hasn't gone beyond that here.

A party has a general right to compel any person to appear at a deposition, through issuance of a subpoena if necessary. *CSC Holdings, Inc. v. Radios*, 309 F.3d 988, 993 (7th Cir. 2002). Non-parties are not exempt from the basic obligation of all citizens to provide evidence of which they are capable upon appropriate request. *Jaffee v. Redmond,* 518 U.S. 1, 9 (1996). Or as Wigmore phrased it: "the public ... has a right to every man's [and every woman's] evidence." 8 J. Wigmore, Evidence § 2192, p. 64 (3d ed.1940). That applies to Presidents, *Clinton v. Jones*, 520 U.S. 681, 703-04 (1997); *United States v. Nixon,* 418 U.S. 683 (1974); *United States v. Burr*, 25 F. Cas. 30, 34 (C.C.D. Va. 1807), and members of families embroiled in unfortunate disputes over a parent's estate. If the answers to the questions posed to Ms. Moore at her deposition are truly beyond her knowledge, "I don't know" is not a forbidden response. Indeed, it is

appropriate. If she truly does not have access or knowledge regarding the whereabouts of the requested documents, she can say so at her deposition. But, she cannot simply avoid complying with the subpoena altogether by alleging in a motion to quash that a deposition would be a pointless event since she is without any relevant knowledge.

## CONCLUSION

The motion of Eleise Moore to quash the subpoena directed to her [Dkt. #104] is denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 7/6/16

Any objections to this order must be served and filed within 14 days. The district judge in the case will only consider timely objections, will and modify or set aside any part of this order that is clearly erroneous or contrary to law. Failure to file and serve timely objections may constitute of waiver of those objections. Fed.R.Civ.P. 72(a); *see Flint v. City of Belvidere*, 791 F.3d 764, 769 (7th Cir. 2015); *Williamson v. Indiana Univ.*, 345 F.3d 459, 464 (7th Cir. 2003).