UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA REED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-cv-2247 |
| | ) | |
| v. | ) | Hon. Jorge L. Alonso |
| | ) | |
| STATE OF ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Linda Reed ("Reed") filed against defendant State of Illinois a two-count third amended complaint, in which she alleges that defendant violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, (Count I) and the Rehabilitation Act, 29 U.S.C. §794(a), (Count II) when two state-court judges denied her requests for appointment of counsel. Defendant State of Illinois ("Illinois" or the "State") moves for summary judgment on both counts. For the reasons set forth below, the Court grants the motion.

**I.    BACKGROUND**

The following facts are undisputed unless otherwise noted.[1]

---

[1] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). The Court does not consider any facts that parties failed to include in their statements of fact, because to do so would rob the other party of the opportunity to show that the fact is disputed.

Plaintiff Reed has a bachelor's degree in criminal justice from the University of Wisconsin and a master's degree in education. For several years, she taught in the public schools of Milwaukee, where she lived.

During the time period relevant to this case, plaintiff suffered from a number of conditions: Tardive Dyskinesia, post-traumatic stress disorder, bipolar disorder and anxiety. Tardive Dyskinesia is a nervous-system disease that causes involuntary movements, including protrusion and twisting of the tongue and pursing movement of the lips. Tardive Dyskinesia can make it difficult for a person to communicate and can be exacerbated by stress and anxiety. Because the condition makes speaking difficult, it can also cause anxiety. Plaintiff, for example, sometimes experienced stress, anxiety and frustration attempting to communicate. Plaintiff also informed her doctor that even during times when her Tardive Dyskinesia was improving, anxiety would bring back the symptoms and make it difficult for her to communicate.

The events leading up to this case began in late 2013, when plaintiff became involved with a probate case at one of defendant's courthouses, specifically, the Circuit Court of Cook County. The reason plaintiff became involved in a probate case was that she was the daughter of Evia Tharbs and Eddie Tharbs, Sr. and the sister of Eddie Tharbs, Jr. In 2006, Evia Tharbs was found incompetent and had a guardian of the person and a guardian of the estate appointed for her. Eddie Tharbs, Sr. died in 2009. By November 30, 2009, Eddie Tharbs, Jr. was appointed successor plenary guardian for the estate of Evia Tharbs, who died on November 22, 2013. In January 2014, plaintiff, concerned that assets were missing from the estate, filed in the probate court a petition for appointment of independent administrator with respect to both the guardianship estate of Evia Tharbs and the estate of Eddie Tharbs, Sr. That motion was heard March 5, 2014.

In the meantime, plaintiff and defendant discussed potential accommodations. In fact, even before plaintiff filed her petition in probate court, she contacted that court's disability coordinator. The Circuit Court of Cook County employs a disability coordinator to act as a liaison between litigants who request accommodations and the judges presiding over their cases. The Disability Coordinator sometimes discusses potential accommodations with the Illinois Attorney General's Disability Rights Bureau and the United States Department of Justice's ADA helpline. Although the disability coordinator discusses requests for accommodation with judges, each judge alone decides whether to grant a particular accommodation.

Plaintiff's first contact with the disability coordinator was on December 11, 2013, when plaintiff reached out to request an accommodation form. The disability coordinator sent plaintiff the form the same day. While waiting for plaintiff to return the form, the disability coordinator, on January 6, 2014, supplied plaintiff a legal services directory to help plaintiff should she choose to hire an attorney. When plaintiff returned the accommodation form on February 3, 2014, plaintiff requested the following accommodations: (1) a note taker whose notes would become part of the court file; (2) the ability to participate in court hearings by telephone; and (3) the ability to respond by email. In the form, plaintiff did not request an attorney, because, at the time, she did not think she needed one.

The disability coordinator conferred with Judge Quinn, who was presiding over the probate case, and let plaintiff know, on February 7, 2014, what Judge Quinn had decided. Judge Quinn allowed plaintiff to use a note-taker but denied plaintiff's request that the notes become part of the file. Plaintiff was provided official transcripts of all proceedings without cost. Judge Quinn also allowed plaintiff to participate in hearings by telephone. As for plaintiff's third request, Judge Quinn denied plaintiff's request to communicate via email, but offered, as an

alternative, to let plaintiff communicate by Gmail Chat or Textnet. Plaintiff declined to use Gmail Chat or Textnet.

Over the next few weeks, plaintiff and the disability coordinator continued to discuss potential accommodations. The disability coordinator told plaintiff about a Milwaukee organization called Independence First, which the disability coordinator thought might be of use to plaintiff. Plaintiff responded that she could not travel to their office. On February 27, 2014, plaintiff told the disability coordinator that the disability coordinator "could have an attorney appointed" for plaintiff. The disability coordinator consulted Judge Quinn, who declined. At the Judge's instruction, on February 28, 2014, the disability coordinator sent plaintiff a letter stating that the court could not appoint an attorney for her, because she was neither a ward nor a respondent to a petition. The disability coordinator invited plaintiff to name additional accommodations if she needed any.

On March 1, 2014, a few days before the March 5, 2014 hearing on plaintiff's petition to appoint an independent administrator, plaintiff informed the disability coordinator that she intended to appear by telephone. Plaintiff stated that she could appear in person if the court provided nine things, including transportation to/from Chicago, room and board for herself and her daughter and protection from guns. The disability coordinator declined those nine items and again mentioned the possibility of Gmail Chat and Textnet.

On March 5, 2014, plaintiff's petition was heard before Judge Quinn. Plaintiff participated by telephone. Judge Quinn testified that she was able to follow what plaintiff was saying, although, in the transcript of the hearing, some of plaintiff's words are listed as "unintelligible." At the March 5, 2014 hearing, plaintiff did not request appointment of counsel.

4

At the hearing, Judge Quinn denied plaintiff's petition as to Eddie Tharbs, Sr.'s estate on the grounds that the estate had closed in 2010. As to Evia Tharbs's estate, Judge Quinn continued plaintiff's petition to April 22, 2014 and ordered Eddie Tharbs, Jr. to file the final inventory and accounting of the estate.

At the April 22, 2014 hearing (at which plaintiff did not request appointment of counsel), plaintiff again appeared by telephone. At the hearing, Judge Quinn appointed a *guardian ad litem* to advise the court on whether Eddie Tharbs, Jr. should be removed as guardian of the estate given his failure to file the inventory and accounting. Judge Quinn continued the hearing to May 29, 2014.

In the meantime, plaintiff had filed this suit in federal court. Specifically, on March 26, 2014, plaintiff filed a petition for leave to proceed *in forma pauperis* and docketed her original complaint in this case. Her original complaint was deemed filed on April 2, 2014, the date on which Judge Gettleman granted her petition to proceed *in forma pauperis*. Local Rule 3.3(d) ("If the judge grants the IFP petition, the complaint shall be filed as of the date of the judge's order . . .").

At some point before the May 29, 2014 hearing, Judge Quinn learned of this federal lawsuit and recused herself from the guardianship proceeding in state court. The guardianship proceeding in probate court was reassigned to Judge Collins-Dole. At the May 29, 2014 hearing, which plaintiff participated in by telephone, Judge Collins-Dole ordered Eddie Tharbs, Jr. to file an inventory and accounting so that the *guardian ad litem* could review it. Plaintiff stated that relatives had stolen her parents' money and that she needed her inheritance. Judge Collins-Dole told plaintiff that a decedent's estate would have to be opened in decedent's court. Judge

Collins-Dole continued the case to June 23, 2014, at which hearing plaintiff again appeared by telephone. Judge Collins-Dole again order the guardian to file an inventory and accounting.

On August 5, 2014, plaintiff filed a written motion for appointment of counsel, in which she stated that "because of [her] disabilities" she was "unable to persuade anyone." Plaintiff's motion was heard August 28, 2014 at a hearing in which plaintiff again participated by telephone and continually interrupted Judge Collins-Dole. Judge Collins-Dole explained that the purpose of the hearing was to determine whether the inventory and accounting that had been filed were acceptable. Judge Collins-Dole also explained that she could not give money to plaintiff and that if plaintiff wanted money, she would have to open a decedent's estate. Plaintiff said, "You can't send me over there without a lawyer because I don't have any money." Judge Collins-Dole offered to provide plaintiff a list of low-cost attorneys, but plaintiff refused. Judge Collins-Dole denied plaintiff's request for appointment of counsel.

In subsequent hearings, at which plaintiff participated by phone, Judge Collins-Dole approved the inventory and accounting and closed the guardianship proceeding. Judge Collins-Dole ruled that she lacked jurisdiction over any other issues, which she said should be filed in the decedent's estate. The disability coordinator told plaintiff whom to contact in order to open a decedent's estate.

On October 8, 2014, plaintiff filed a notice of appeal. Plaintiff argued that the accounting and inventory were incorrect. The Illinois Appellate Court affirmed the dismissal for lack of jurisdiction. The Illinois Appellate Court stated, among other things, "Relief can only be granted in a decedent's estate and plaintiff failed to file for administration of the decedent's estate, which is an entirely new action."

On December 19, 2014, plaintiff filed in this case her third amended complaint, in which she alleged claims under the ADA (Count I) and the Rehabilitation Act (Count II).

## II. STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. DISCUSSION

### A. *Rooker-Feldman*

Defendant first argues that the Court lacks jurisdiction over this case pursuant to the *Rooker-Feldman* doctrine. In this case, plaintiff seeks relief from the denial of her requests for appointment of counsel to represent her in a state-court probate proceeding. The facts are undisputed that one of plaintiff's requests for appointment of counsel was denied by Judge Quinn on February 27, 2014, and plaintiff was informed of the decision on February 28, 2014, before commencement of this suit. The facts are undisputed that one of plaintiff's requests for

appointment of counsel was denied by Judge Collins-Dole in open court on August 28, 2014, after plaintiff filed this suit but before she amended her complaint.

As the Seventh Circuit has explained,

> The essence of the *Rooker-Feldman* doctrine is that the lower federal courts do not have the authority to review the judgments of the state courts even when a federal question is presented. The only federal court possessing such authority is the Supreme Court of the United States.

*Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 701 (7th Cir. 1998); *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) ("Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment[.] . . . To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original.") (internal citations omitted).

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court considered the bounds of the *Rooker-Feldman* doctrine. In *Exxon*, the parties had been litigating parallel suits over breach of the same contract in both state and federal court. *Exxon*, 544 U.S. at 289. While the federal case was on interlocutory appeal, the state-court judge entered final judgment. *Exxon*, 544 U.S. at 289-90. The Third Circuit Court of Appeals dismissed the federal appeal for lack of jurisdiction based on the *Rooker-Feldman* doctrine, and the Supreme Court reversed. The Supreme Court explained that the problem was not *Rooker-Feldman*, but claim preclusion. *Exxon*, 544 U.S. 292-93 ("[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court. Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law."). Thus, the Supreme Court held that the *Rooker-Feldman* doctrine:

8

is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Exxon*, 544 U.S. at 284.

Based on *Exxon*, the Seventh Circuit seems to have adopted a bright-line rule that claims brought in a district court before a state court had entered final judgment are not barred by *Rooker-Feldman*. *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018) ("In the present case, the state court had not rendered a judgment before the district court proceedings began. Therefore, *Rooker-Feldman* does not bar this case.") They added that *Rooker-Feldman* "does not apply independently to interlocutory orders." *Kowalski*, 893 F.3d 995.

In arguing that this case is barred by the *Rooker-Feldman* doctrine, defendant relies heavily on *Sykes v. Cook Cty. Circuit Court Probate Div.*, 837 F.3d 736 (7th Cir. 2016). In *Sykes*, the Seventh Circuit considered the case of a plaintiff who claimed she had been denied a reasonable accommodation by a state probate court in violation of the ADA. Because the denial had come in the form of a court order, the Seventh Circuit held that it lacked jurisdiction over plaintiff's ADA claim due to the *Rooker-Feldman* doctrine. *Sykes*, 837 F.3d at 743 ("[W]hen as in this case the injury is executed through a court order, there is no conceivable way to redress the wrong without overturning the order of a state court. *Rooker-Feldman* does not permit such an outcome."). In *Sykes*, the Seventh Circuit also said, "we have held that interlocutory orders entered prior to the final disposition of state court lawsuits are not immune from the jurisdiction-stripping powers of *Rooker-Feldman*." *Sykes*, 837 F.3d at 742 (citing *Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. 2014)). In *Harold v. Steel*, the Seventh Circuit stated:

> Nothing in the Supreme Court's decisions suggests that state-court decisions too provisional to deserve review within the state's own system can be reviewed by federal and appellate courts. The principle that only the Supreme Court can

> review the decisions by the state judiciary in civil litigation is as applicable to
> interlocutory as to final state-court decisions. A truly interlocutory decision
> should not be subject to review in *any* court; review is deferred until the decision
> is final.

773 F.3d at 886. That statement was dicta, because the Seventh Circuit went on to say "[n]or need we decide the question in this case . . . because the decision is final [not interlocutory]." *Harold*, 773 F.3d at 886. So, while this Court appreciates that reasonable minds can disagree on whether interlocutory state-court orders should be subject to review in federal district courts, it concludes that the law in this Circuit is that *Rooker-Feldman* does not bar a case such as this one, where plaintiff filed suit before the state court entered a final judgment. *Kowalski*, 893 F.3d at 995.[2]

Accordingly, the *Rooker-Feldman* doctrine does not strip this Court of jurisdiction over this case.

### B. Eleventh Amendment immunity

Defendant next argues that it is immune from suit due to the Eleventh Amendment to the Constitution, which has been interpreted to render states immune from "unconsented suits brought by a State's own citizens." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). Section 5 of the Fourteenth Amendment "permits Congress to abrogate states' sovereign immunity when Congress deems it necessary to protect the substantive rights guaranteed by the Amendments' other provisions" or "the rights guaranteed by the other amendments that have been incorporated against the states via the Fourteenth Amendment's Due Process Clause." *King v. Marion Circuit Court*, 868 F.3d 589, 591 (7th Cir. 2017) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976); *Lane*,

---

[2] The Court also notes that this case was filed before the August 28, 2014 order was issued. Furthermore, the Court doubts whether plaintiff could have sought appellate review of the February 2014 decision to deny appointment of counsel, because that decision, while made by the Judge, took the form of a letter to plaintiff, not a court order.

541 U.S. at 522-23). In considering whether Congress has abrogated a State's rights in a given case, a court must consider both whether "Congress unequivocally expressed its intent to abrogate that immunity" and whether, in doing so, "Congress acted pursuant to a valid grant of constitutional authority." *Lane*, 541 U.S. at 517 (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000)).

### *ADA*

With respect to Count I, under Title II of the ADA, it is clear that Congress explicitly abrogated states' immunity. 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter."). In *Tennessee v. Lane*, the Supreme Court held that "Title II, as it applies to the class of cases implicating the *fundamental right of access to the courts*, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." *Lane*, 541 U.S. at 533-34 (emphasis added).

That does not mean, however, that a state is never immune from suit on an ADA Title II claim. Claims regarding accommodations at a courthouse are only abrogated if they implicate the fundamental right of access to the courts. As the Seventh Circuit has explained:

> The Constitution does not guarantee a freestanding 'fundamental right of access to the courts.' Thus, *there is no constitutional problem with* filing fees or *requiring litigants to pay for their own lawyers in civil cases*, although those expenses may make litigation impractical if not impossible for some persons. *Lane* used the phrase 'fundamental right of access to the courts' to denote a cluster of constitutional rights, such as due process of law, that are valid grounds on which Congress might abrogate sovereign immunity. What those rights have in common is that they affect the adjudicatory process itself; they safeguard people's ability to get into court and receive a judicial decision.

*King*, 868 F.3d at 592 (emphasis added) (internal citations omitted). In *King*, the Seventh Circuit went on to hold that the State of Indiana was immune from suit for plaintiff's ADA claim,

because the particular accommodation requested in that case—an interpreter for mediation—did not implicate a constitutional right. *King*, 868 F.3d at 593 ("[T]his case has no constitutional dimension at all. Title II therefore does not abrogate sovereign immunity here, and the Marion Circuit Court remains immune from this suit in federal court."). The Seventh Circuit explained that mediation was not "a general condition precedent to litigation" such that "[plaintiff's] access to courts would have been in danger, just as courthouse facilities that physically exclude handicapped persons block their access." *King*, 868 F.3d 592.

Plaintiff's claim is that she was twice denied a request for appointment of counsel to represent her in the civil probate case. Those denials, however, did not prevent her from accessing the courts. Having an attorney is not a condition precedent to litigating in court; litigants are allowed to proceed *pro se*, as plaintiff was proceeding in the probate case. As the Seventh Circuit pointed out in *King*, "there is no constitutional problem with filing fees or requiring litigants to pay for their own lawyers in civil cases, although those expenses may make litigation impractical if not impossible for some persons." *King*, 868 F.3d at 592 (citing *United States v. Kras*, 409 U.S. 434 (1973)); *see also Lassiter v. Department of Social Services of Durham Cty. N.C.*, 452 U.S. 18, 26-27 (1981) ("an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty"). Accordingly, this case has no constitutional dimension, and Title II does not abrogate defendant's sovereign immunity. Defendant is immune from plaintiff's ADA claim in federal court.

Thus, defendant is entitled to judgment as a matter of law on its sovereign immunity defense to plaintiff's ADA claim, and the Court hereby grants summary judgment to defendant on Count I. Count I is dismissed without prejudice.

*Rehabilitation Act*

The result is not the same with respect to plaintiff's claim under the Rehabilitation Act. Like the ADA, the Rehabilitation Act explicitly abrogates sovereign immunity. 42 U.S.C. § 2000d-7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . ."). What differentiates the Rehabilitation Act is that it is "a condition on the receipt of federal funds" such that "the Rehabilitation Act is enforceable in federal court against recipients of federal largess." *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000). If defendant accepts money from the federal government, it is not immune from a claim under the Rehabilitation Act. Sovereign immunity is an affirmative defense. *Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016). Defendant has not put forth any evidence (let alone undisputed evidence) that it accepts no federal dollars, and, thus, defendant has failed to show that it is entitled to judgment as a matter of law with respect to its sovereign immunity defense to Count II.

### C. Merits of plaintiff's claim

Although the Court has already granted defendant summary judgment on plaintiff's ADA claim, the merits of her ADA claim and her Rehabilitation Act claim are materially identical and require the same analysis. *Holzmueller v. Illinois High School Assoc.*, 881 F.3d 587, 592 (7th Cir. 2018) ("The relevant provisions and implementing regulations of the Rehabilitation Act and the ADA are 'materially identical.' As a result, 'courts construe and apply them in a consistent manner, and our evaluation of [plaintiff's] claims under both require the same analysis.") (internal citations omitted). To show that she is entitled to relief under the Rehabilitation Act, plaintiff must show she (1) is a "qualified person (2) with a disability and (3) [defendant] denied

13

[her] access to a program or activity because of [her] disability." *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012); *see also* 29 U.S.C. 794(a) ("No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .").

Defendant does not question whether plaintiff has put forth sufficient evidence to survive a motion for summary judgment as to whether she is a qualified person with a disability. Instead, defendant argues that plaintiff has failed to put forth sufficient evidence from which a reasonable jury could conclude plaintiff was excluded from participating in the probate court proceeding "solely by reason of her" disability." 29 U.S.C. 794(a).

Plaintiff argues that she was denied participation, because, without an attorney, her cognitive and communicative disabilities rendered her unable to participate meaningfully in the probate court proceeding. To be clear, plaintiff is not arguing that she was physically or otherwise actually excluded from participating in hearings on her petition. This is not a case in which a plaintiff was, say, physically kept from a second-floor courtroom in a building without an elevator by, say, a disability that prevented her from climbing stairs. It is undisputed that plaintiff was allowed the opportunity to participate (and did, in fact, participate) by telephone in multiple court hearings before judges. Plaintiff was provided transcripts (without cost to her) of the hearings and was given the opportunity to communicate to the judges via Gmail Chat or Textnet (although plaintiff declined to use those).

What plaintiff is arguing is that her disability made it difficult for her to form coherent arguments and to articulate them clearly to the Judge. Thus, plaintiff's argument is that she should have been given an accommodation—namely an appointed attorney—so that she could

14

make her legal position understood by the Judge. What this case is about is whether defendant excluded plaintiff from participating in court proceedings by denying her a reasonable accommodation. The denial of a reasonable accommodation is a denial of access.

Although the Rehabilitation Act does not by its language require a reasonable accommodation, courts have concluded that a denial of a reasonable accommodation is a denial of access. *Jaros*, 684 F.3d at 672 ("Refusing accommodations is tantamount to denying access; although the Rehabilitation Act does not expressly require accommodation, 'the Supreme Court has located a duty to accommodate in the statute generally.'") (quoting *Wis. Cmty. Serv. v. City of Milwaukee*, 465 F.3d 737, 747 (7th Cir. 2006)); *Alexander v. Choate*, 469 U.S. 287, 301 (1985) ("to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made.").[3]

Defendant argues that the accommodation plaintiff requested—the appointment of an attorney to represent her in the state-court probate case—was not a *reasonable* accommodation. In arguing that appointment of counsel is not a reasonable accommodation, defendant points to a regulation, which says a "public entity" is:

> not require[d] . . . to provide individuals with disabilities personal devices, such as wheelchairs; individual prescribed devices, such as prescription eyeglasses or hearing aids; readers for personal use or study; or services of a personal nature including assistance in eating, toileting, or dressing.

28 C.F.R. §35.135.[4] The question is whether the provision of an attorney to represent plaintiff in state court would fall in the category of "services of a personal nature," such that it is not a

---

[3] The duty to provide a reasonable accommodation under Title II of the ADA comes from its regulations. 28 C.F.R. §35.130(b)(7)(i); *Holzmueller*, 881 F.3d 587, 592 (7th Cir. 2018).
[4] This is an ADA regulation, and plaintiff does not argue that it should not apply to her Rehabilitation Act claim. "The regulations interpreting the ADA provide guidance on how to interpret" the Rehabilitation Act. *Hamm v. Runyon*, 51 F.3d 721, 725 (7th Cir. 1995). What is a reasonable accommodation under one statute should be the same as what is a reasonable

15

reasonable accommodation under the ADA or Rehabilitation Act. The Court concludes that attorney services are personal services. Like hearing aids, eyeglasses and wheelchairs, attorney services are personal in that they are specific to an individual person. If the probate court had appointed an attorney to represent Reed, the attorney would have advocated on behalf of only Reed, not the other parties before the probate court and not the probate court itself. Furthermore, like services for dressing or toileting, attorney services are also personal in that they are private. Attorneys are obligated to keep their client communications confidential, and their communications are protected from disclosure by the attorney-client privilege. Thus, the Court concludes that attorney services are personal services and are not reasonable accommodations under the ADA or Rehabilitation Act. *Cf. Blatch ex rel. Clay v. Hernandez*, 360 F. Supp.2d 595, 630-631 (S.D. N.Y. 2005) ("analytical or advocacy services are personal aids, the provision of which is not required by [the ADA or the Rehabilitation Act].").[5]

In reaching this conclusion, this Court joins the other courts who have, for various reasons, rejected claims that state courts are required to provide an attorney as a reasonable

---

accommodation under the other, so it makes logical sense to apply this ADA regulation to plaintiff's claim under the Rehabilitation Act.

[5] Even if the Court were wrong in concluding that attorney services are personal, the Court would still conclude that providing an attorney is not a reasonable accommodation for a court to provide. The services courts provide are that of a neutral decision-maker for legal disputes. Courts do not represent parties or advocate on behalf of parties. Nor could they: it would constitute a conflict of interest and violate the rules against avoiding the appearance of impropriety. Thus, it is difficult to see how any court could be required to employ attorneys to represent litigants in cases before it. It is true, of course, that federal courts, for example, do sometimes, pursuant to the *in forma pauperis* statute, 28 U.S.C. § 1915, recruit volunteer attorneys to represent civil litigants. These federal courts are not hiring attorneys to represent these litigants or even *appointing* attorneys to represent indigent litigants. They are merely "rely[ing] on the generosity of lawyers to volunteer their time and skill on behalf of indigent civil parties." *Wilborn v. Easley*, 881 F.3d 998, 1008 (7th Cir. 2018). The Court fails to see how it would be reasonable to require a court to provide an attorney, because it would fundamentally alter the nature of the services provided by courts.

accommodation. *See Douris v. New Jersey*, 500 Fed.Appx. 98, 101 (3rd Cir. 2012) ("[T]here is no requirement under the ADA that courts provide legal counsel for persons with disabilities."); *Kloth-Zanard v. Malloy*, Case No. 15-cv-00124, 2016 WL 5661977 at *10 (D. Conn. Sept. 29, 2016) (dismissing claims under the ADA and Rehabilitation Act and explaining, "plaintiff cites no authority, and the Court is unaware of any, that obligated DSS to appoint and pay for a lawyer to represent her at the hearing."); *D'Ambrosio v. City of Phoenix*, Case No. 14-0323, 2015 WL 2412113 at *2 (Az. Ct. App. May 5, 2015) ("[T]he ADA does not require appointment of counsel in a civil trip-and-fall case."); *Redbow NLN v. Circuit Judge Jeffery Kelly*, Case No. 16-cv-241, 2016 WL 3574338 at *3 (M.D. Ala. June 1, 2016). The Court is not aware of any contrary authority, and plaintiff has not cited any.

This case might be different if plaintiff had put forth evidence that the probate court provided counsel to all litigants except to her. This case might be different if plaintiff had put forth evidence that a similarly-situated person without a disability was granted appointment of counsel for a petition to appoint an independent administrator. Plaintiff did not put forth such evidence.

Accordingly, defendant has shown it is entitled to judgment as a matter of law on plaintiff's Rehabilitation Act claim. Count II is dismissed with prejudice.

## IV.   CONCLUSION

For all of these reasons, the Court hereby grants defendant's motion for summary judgment. Count I is dismissed without prejudice. Count II is dismissed with prejudice.

17

The Court requested counsel to volunteer to represent plaintiff in this case, and the Court thanks them for doing so.

SO ORDERED.                                          ENTERED: January 7, 2019

                                                    _____
                                                    JORGE L. ALONSO
                                                    United States District Judge